CORNING & CO.

*v.*

ADOLPH WOOLNER *et al.*

*Opinion filed December 16, 1903.*

1. PLATS—*parties purchasing lots with reference to platted street are entitled to have it remain open.* As against the owner of a platted tract, and those claiming under him, parties purchasing lots with reference to the plat are entitled to have the streets designated thereon remain open, whether there has been a proper acceptance by the public authorities or not.

2. SAME—*when platted street cannot be vacated.* Parties purchasing land in a platted tract cannot vacate a street designated upon such plat, as against the rights of other persons who purchased lots in such tract with reference to the plat, whether the plat was sufficient to constitute a statutory dedication or not.

APPEAL from the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

STEVENS, HORTON & ABBOTT, and WINSLOW EVANS, for appellant.

PAGE, WEAD & ROSS, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Peoria county enjoining and restraining the appellant, Corning & Co., from building upon or otherwise obstructing Liberty street, in Lower Peoria, which was laid out and platted by Aquilla Moffat in 1836. Said plat was duly recorded, and a substantial copy of which herewith follows:

In 1857 Moffat conveyed blocks 1, 2, 3, 6, 7 and 8 to William H. Haskell, describing the property conveyed by reference to the plat. In 1858 Haskell and wife conveyed part of the premises to Edward J. Cowell. Cowell, shortly after acquiring title to such premises, subdivided and re-platted the south half of block 3 and all of block 7.

The plat of the south half of block 3 is as follows:

SENECA STREET.

CENTER STREET.

The plat of block 7 is as follows:

CENTER STREET.

HAMILTON STREET.

ERIE STREET.

Cowell, in making his plats, did not change or alter the streets indicated on the Moffat plat, but widened the alley in block 3 and designated it as Seneca street, and located an alley midway between that street and Center street. Cowell then proceeded to sell the lots, and in 1860, by two separate deeds, he and his wife conveyed to Chris-

tian Tuefel, by the name of Christian David, lots 11, 12, 16 and 17 in Cowell's subdivision of block 7. The grantee took possession of said premises and improved the same, and has since occupied them as a homestead.

On December 9, 1875, Aquilla Moffat conveyed to said · Christian Tuefel, by metes and bounds, about twelve acres of land south of the south-east portion of his plat of Lower Peoria, the location of which tract, with reference to the Moffat plat of Lower Peoria, is here shown:

At the time of this purchase there was not, nor has there ever since been, any way of access to it except along and over Liberty street. Complainant Tuefel testified that when he purchased this tract Moffat told him that Liberty street extended to it, and that he relied upon such statements in making the purchase. After the purchase of this tract by said complainant he enclosed it, and has ever since used it for farming and gardening purposes, and was accustomed to reach said tract from his home in block 7, by going along Hamilton street to Center street, thence along Center street to Liberty street, and along Liberty street to the land.

April 26, 1883, Tuefel purchased from Sarah A. Reddingbow, who claimed title by *mesne* conveyances from Edward J. Cowell, lot 6 in Cowell's subdivision of the south half of block 3, in Lower Peoria. At various times from 1898 to March, 1901, the complainant Adolph Woolner purchased from parties who claimed title by *mesne* conveyances from Cowell, lots 4, 5, 23, 24, 25 and 26 in Cowell's subdivision of the south half of block 3, in Lower Peoria.

The allegations of complainants' bill that Liberty street was kept open and constantly used by the public from the time of its platting until the filing of said bill is supported by the testimony of numerous witnesses introduced by complainants. Appellant, however, contends that no part of Liberty street was ever opened and traveled as a public highway. On this point the chancellor found "that said Liberty street, from the time the same was platted, as aforesaid, has been constantly used by the public as a public street," and we are inclined to think the proof supports such finding. There is evidence to the effect that as early as 1867 there was a row of maple trees of considerable size along the westerly boundary of blocks 4 and 5, in Lower Peoria, (being the easterly line of Liberty street,) its entire length, and coincident with such row of trees was a fence; that at

the same time there extended a fence along the easterly boundary of blocks 3 and 6, (being the westerly boundary of Liberty street,) except at street intersections, so that the street was fenced in its entire length. Complainant Tuefel testified that he and his family, at certain seasons, had traveled said Liberty street almost every day from 1875 to the filing of the bill in this case. One Meid-roth testified he had lived in the vicinity of Lower Peoria for forty-four years and is familiar with the streets and alleys as platted by Aquilla Moffat; that said Liberty street has been much used and traveled by wagons and other vehicles and by foot passengers; that complainant Tuefel used said street constantly in passing from his homestead to the tract of land owned by him south of said Liberty street; that there has been a great deal of hauling along said street, and that the closing or obstructing of said street will, because of the location of their said properties, redound greatly to the injury of complainants. Quite a number of other witnesses testified equally as strong as the one just cited, in favor of complainants and in support of the allegations of their bill; but we deem it unnecessary to dwell upon the testimony, as we have previously stated that it is of such character as to amply support the chancellor's decree.

In June, 1883, William R. Bush and Delos S. Brown, who claimed to have then become the owners, by *mesne* conveyances from Moffat, of all the lands on both sides of Liberty street and abutting thereon, undertook to vacate Liberty street by executing a deed of vacation thereof, their position being, that the dedication proffered by the plat of Aquilla Moffat had never been accepted by the proper public officials, or, as a matter of fact, by the public, and, such being the case, that the lot owners having lots abutting thereon owned the fee of the street, burdened only with the offer of dedication; that they having acquired all the lots abutting on said street, the fee thereof was in them, burdened as afore-

said, but by such renunciation and deed of vacation such burden was removed. While, under the view we entertain and as will be expressed herein, such contention is untenable in any event, yet we may add in passing that such contention as to the acquirement of the fee of the street by Bush and Brown is inaccurate, for the deeds of conveyance to Bush and Brown of a considerable part of the property abutting on Liberty street described such property by metes and bounds, and under such descriptions the area of the street was not included, so in no event are they in a position to lay claim to the fee of said street.

On July 7, 1900, Delos S. Brown and the legal representatives of Bush made a deed to appellant, Corning & Co., by metes and bounds, of certain property, which included Liberty street throughout its entire length and all property owned by them contiguous to the west side of said street. Shortly before the filing of the bill in this case said Corning & Co. began the erection of a large distillery upon that portion of the property conveyed to it which is situated in block 6, extending the building over and on to Liberty street, so that travel thereon would be obstructed. The location of this building was afterwards changed so that the obstruction caused by it was removed, but appellant still maintained and contended that it had the right to obstruct said street, and it caused a petition to be filed with the city council of the city of Peoria by the Peoria Terminal Railway Company for permission to lay side-tracks in Liberty street, connecting with appellant's distillery buildings. The petition was granted, with the understanding that there should be left an open space of thirty-two feet for the use of the public on said street. After the beginning of this suit appellant notified its grantors of Liberty street to appear and defend their title to the same. The said grantors and their representatives then presented a petition to the chancellor requesting that an order might

be entered permitting them to appear and defend said suit, but said petition was denied.

Appellant's contentions are, first, that the plat of Aquilla Moffat, notwithstanding certain patent deficiencies therein, should be regarded as a good statutory plat; second, that the conveyances to Bush and Brown of the property abutting on Liberty street were made before any portion of the territory included in the Moffat plat had been included within the corporate limits of any city, village or town and before Liberty street had been opened or accepted by any public authorities, and that by reason thereof they took the title to said Liberty street by virtue of the conveyances to them of the adjoining property, burdened only with the offer of dedication; third, that by reason of the deed of vacation of said Bush and Brown the offer to dedicate was withdrawn, and said parties thereafter held the fee to said street free from any claim of a public highway therein; fourth, that, in any event, Liberty street having remained unopened and unaccepted by any public authorities, the right to now open the same has been waived; fifth, that the evidence does not support or the bill allege a highway by prescription; and sixth, that the chancellor erroneously denied the petition of the appellant's grantors to appear and defend appellant's title in this suit.

Under our view of the law applicable to this case it is unnecessary for us to discuss the various contentions of appellant, or to determine whether the plat of Aquilla Moffat to Lower Peoria can be held to be a compliance with the statute. As we regard it, the vital point to be determined in this case and those of similar import is, whether the alleged street which is sought to be vacated or obstructed was by the original owner designated upon the plat with reference to which subsequent lots and tracts have been sold. If so, where private rights may be affected, and as between the author of such plat or his privies in estate and those buying lots upon the faith of

such plat or with reference thereto, there is an implied covenant that such designated street or public way shall be forever open for such purposes, and free from any claim or interference by the original owner and author of the plat and those claiming under him. Whether the plat of Aquilla Moffat, in this case, could be held to be a good statutory plat or not, it was, at least, sufficient to constitute a common law plat and to manifest an intention of the author to dedicate to public use the designated streets thereon, which is sufficient to estop such original owner and author of the plat, and those claiming under him, from denying or rescinding such dedication, whether it was so accepted by the public authorities of the village or municipality or not. In *Marsh* v. *Village of Fairbury*, 163 Ill. 401, we said (p. 407): "But in connection with these public rights, those who purchased lots fronting on this park took with reference to the plat and had an appurtenant right therein, which was their own property as a right appurtenant, and that was to have the streets and block 10 remain open for public use. The vendor, or those privy to his title, would, by his acts in platting and selling lots by this plat, be estopped from inclosing block 10 as private grounds. Such being the case, the question as to whether or not the village authorities accepted the dedication of that block would not defeat the right of individual purchasers from asserting their rights to have the same open forever for the use of the public." In this case each of the appellees is the owner of one or more lots in Cowell's subdivision of the south half of block 3, in Lower Peoria, on the east and west of which subdivision extend Center and Seneca streets and an alley through the middle, all of which open into Liberty street. It seems but natural that the closing of Liberty street would work manifest inconvenience and injury to property so situated,

The several lots and tracts of land purchased by appellee Tuefel were purchased before the pretended

vacation of said Liberty street, and according to the un-
disputed testimony the twelve-acre tract was purchased
under and on the faith of the express representation that
Liberty street extended to it and by means of it the pur-
chaser gains access to his land.    While the purchase of
this tract, because of its location outside of the platted
territory, might not vest in the purchaser any appurte-
nant right to have the integrity of the plat preserved,
yet it is proper to take into consideration its location
with reference to Tuefel's homestead site, which is with-
in the platted district and was purchased long anterior
to the attempted vacation of Liberty street, and because
of such relative locations it is apparent that the pres-
ervation of Liberty street, as designated on the plat of
Aquilla Moffat, is of especial interest and value to Tue-
fel; and this interest arose before the execution of the
deed of vacation referred to, as Tuefel was before that
time the owner of both these tracts, and then, as now,
by their management they were intimately connected.

Thus it will be seen, both from the surrounding cir-
cumstances and the testimony of the witnesses, that the
proposed closing up of Liberty street will work incon-
venience and pecuniary loss to parties purchasing with
reference to and on the faith of the plat of Aquilla Mof-
fat showing the existence of Liberty street.    But even
if no especial inconvenience or loss were shown, the com-
plainants, who are shown to have purchased with refer-
ence to said plat, are entitled, under the law, to demand
that, as between themselves and Aquilla Moffat, and
those claiming under him, the representations made by
said plat as to the public streets thereon, constituting,
as they did, inducements to purchasers of property in
the territory platted, shall not now, after such purchases
have been made, be impugned or held for naught, but
that the good faith and verity thereof shall be preserved.
As said in *Clark* v. *McCormick*, 174 Ill. 164 (on p. 174): "The
arrangement of streets and ways formed a part of the

consideration of the purchase of each block or part thereof, not only as between the original proprietor of the plat and those who purchase from him, but also as between all subsequent vendors and vendees. The original proprietor sold to his vendee the rights and privileges of the streets, and each subsequent vendor passed such rights to his vendee. The law implies mutual agreements between all such parties that the streets shall always remain open for use as platted. It was not, therefore, within the power of the petitioners, as owners of the blocks along the west side of the street in question, (being but a portion of the blocks in the subdivision,) to withdraw the dedication of the streets as against the private rights of any other owners of blocks or parts of blocks in the subdivision,"—citing *Zearing* v. *Raber*, 74 Ill. 409; *Earll* v. *City of Chicago*, 136 id. 277; *Cihak* v. *Klekr*, 117 id. 643; *Town of Lake View* v. *LeBahn*, 120 id. 92. And further, quoting from the same case, at page 173: "And the right thus passing to the purchasers is not the mere right that such purchasers may use these streets, or other public places, according to their appropriate purposes, but a right vesting in the purchasers that all persons whatever, as their occasion may require or invite, may so use them. In other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places indicated as such upon the plan shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use."

The insistence of appellant that by reason of the deed of vacation of its grantors, referred to in this case, complainants' bill is devoid of merit is not tenable, where, as here, private rights have been acquired which would be sacrificed by such vacation. As said in *Clark* v. *McCormick, supra*, in speaking of the provision of the statute for the vacation of a statutory plat: "Such statute is

framed with a view of protecting the rights of all interested;" and as to the nature of the right to have the integrity of the plat preserved, acquired by those who purchase with reference to a particular plat, as set out in the previous quotation, it is held to be valuable and substantial. The principle here applied is only in conformity with all other transactions where one who takes a certain position and causes others to act thereon is estopped from afterwards denying or receding from such position to the injury of those whom he has led to act upon the faith of his position.

As to appellant's sixth contention, viz., the denial of the petition of appellant's grantors to appear and defend in this suit, though more might be said, we regard it sufficient answer to say that this is the appeal of Corning & Co. Petitioners did not appeal, and the rejection of said petition was not a denial of any right belonging to Corning & Co.

The decree of the circuit court of Peoria county is sustained.

*Decree affirmed.*