(No. 15842.—Decree affirmed.)

THE VILLAGE OF BENLD, Appellee, *vs.* GEORGE B. DORSEY, Trustee, *et al.* Appellants.

*Opinion filed February 19, 1924.*

1. PLATS—*when certificate to plat negatives intention to dedicate park.* The word "park," written on a centrally located block in a plat of a village, indicates an intended use as a public park and will constitute, *prima facie,* a statutory dedication for such use; but where the certificate to the plat makes no mention of the park and recites that no part of the lands described is for public use except the streets and alleys shown on the plat, any intention to dedicate said block is negatived, and the block does not become a public park under the statute or by virtue of the plat.

2. DEDICATION—*intention to dedicate and acceptance of dedication must be proved.* A dedication of ground for public use can be made only by the owner, and an intention of the owner to make a dedication must be satisfactorily proved, and there must also be an acceptance by the public of the intended dedication.

3. SAME—*dedication may be shown by conduct amounting to an estoppel.* An intention to dedicate may be proved by such acts or declarations of the owner as will amount to an estoppel to deny

dedication or from which it can be fairly inferred that he intended a dedication to the public.

4. SAME—*dedication to public use is not within the Statute of Frauds.* No particular form or ceremony is necessary to a common law dedication to public use as the dedication is not within the Statute of Frauds, and the intention to dedicate may be manifested by the acquiescence of the owner in the actual use of the land for the intended purpose.

5. SAME—*sale of lots according to plat constitutes dedication of any portion designated as for public use.* Where the owner of land exhibits a plan of a town and sells lots to individuals according to the plan the purchasers acquire individual rights against the owner which may be enforced, and where the owner sells lots with reference to a plat or map on which a portion indicates a public use, he thereby dedicates such land to the use of the public for the specified purpose.

6. SAME—*fact that property is not listed for taxation tends to show dedication to public use.* In a proceeding by injunction to determine whether a certain block in a village had been dedicated by the owner to public use as a park, the fact that the block was not listed for taxation is an evidentiary fact to be considered as tending to show the intention of the owner and that he regarded the block as public property; but such fact is not conclusive.

7. SAME—*secret intention of owner or his agent will not preclude dedication manifested by acts and declarations.* A dedication to public use manifested by acts and declarations of the owner or his agent on which the public has a right to rely is not defeated by a secret intention of such owner or agent not to make a dedication.

8. SAME—*when owner is estopped to deny dedication to public use by declarations and acts of agent.* One who makes a plat of his farm for a village and puts an agent in charge with complete authority and control of the sale of lots is equitably estopped to deny the dedication of a certain block as a public park, manifested by the acts and declarations of his agent, which were relied upon by the public and the village authorities in appropriating such block to public use as a park.

APPEAL from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

ALFRED A. ISAACS, and JESSE PEEBLES, for appellants.

MURPHY & HEMPHILL, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, the village of Benld, filed its bill in the circuit court of Macoupin county alleging that a tract of land described as block 30 in the original plat of the village had been dedicated to the village as a public park, and that George B. Dorsey, trustee, holding the legal title, had contracted to sell the block to Dean K. Rice and other persons, and praying for an injunction restraining said parties from selling or otherwise disposing of the tract. The bill was answered and a cross-bill was filed praying that the claim of the village should be removed as a cloud upon the title. The cross-bill was answered, setting forth the same facts alleged in the original bill, and the issues were referred to a special master in chancery, who took the evidence, found the issues for the complainants in the cross-bill and reported his conclusions to the chancellor, who sustained exceptions to the report and entered a decree as prayed for in the original bill. From that decree this appeal was prosecuted.

On November 11, 1903, George B. Dorsey, trustee, subdivided a part of a farm upon which coal mines were being opened, into lots and blocks, to be known as Benld, which was derived from the name of Ben L. Dorsey. He caused a plat to be made and filed for record, and the premises became the original plat of the village of Benld. All the blocks were divided into lots except a tract between Locust street and Willow street. The east end of this tract was marked 29, with the figures 300 indicating the length from east to west. West of this piece there was a strip marked 100 in width, with dotted lines between it and the two streets and a dotted line along block 29. West of that strip was a block marked 30, enclosed in regular lines covering the west part of the tract, and on that block was the word "Park." That block was about 300 feet square, except 17 feet off the northwest corner. The block was near the

center of the village, and the name "Park" on a piece of ground in the village would indicate its intended use as a place for recreation, amusement and kindred uses as a public park and would constitute a statutory dedication to the public for such uses. In this case, however, while the piece of ground marked as a park was not mentioned, it was stated in the certificate on the plat that no part of the lands described was for the public use except the streets and alleys shown on the plat. This statement in the certificate negatived any intention to dedicate block 30 to the public and it did not become a public park under the statute by virtue of the plat.

It was also alleged that there was a common law or implied dedication by the subsequent acts ˙and statements of F. W. Edwards, who had full authority to control the uses of the property, and that question is to be determined by the evidence of such acts and statements. The farm homestead was on block 29, and it is apparent that that block was not subdivided because of that fact, and it was then and continued to be occupied as a home place and residence. There was no evidence as to the use to which the 100-foot strip was to be devoted, except so far as may be inferred from the dotted lines between it and the two streets and the homestead, and it is now a street. The village was soon settled as a mining town and finally grew to a population of about 4000. George B. Dorsey, trustee, lived at Columbia, Missouri, and F. W. Edwards, who lived in the old homestead, was his agent for selling lots and in general charge of the premises, and it is not denied that whatever Edwards did or said was binding on the owner. After the plat was made Edwards took charge of the sale of the lots, and blue-prints were made of the recorded plat showing block 30 marked as a park and were placed in his office to make sales. His authority was complete, and he testified that he had a number of deeds signed by the owner with the names of the grantees blank, and when a sale was

made he took an acknowledgment of the deed as a notary. To purchasers of lots he stated that block 30 was a public park, and one purchaser testified that he offered Edwards $1000 for 100 feet in block 30, but Edwards said it was a city park and he could not sell it. From the time the village began to be settled, and at least from 1904 to the beginning of the suit, the people of the village used block 30 as a public park. A band-stand, dance platform and refreshment stand were built on the block by general public subscription, in which Edwards joined. The block was used for picnics, band concerts, political meetings, celebrations, and later by the Red Cross, and the children of the village used it freely as a playground. There were toilets, which were repaired by the village, which also made repairs on the buildings when needed, the Red Cross subscribing $37 at one time for such repairs. Edwards represented to the village that it owned the park and ought to keep up the repairs and at times he contributed to the repairs. He lived adjoining the block and gave considerable attention to it by driving off cows, and objected to liquor being sold or drank on the ground and to its use for objectionable purposes. He complained to the village trustees that after a celebration there were papers, bottles and litter scattered over the premises and the village ought to clean it up. The village complied and paid for the cleaning. Edwards testified that he rented the park at times but received nothing, and what he called "renting" amounted to his personal consent. The block was not listed for taxation but was listed on the tax books as "City Park" and was not assessed and no taxes were paid. The explanation of that fact given by Edwards was that the block was being used by the village and ought not to be assessed or taxed.

A dedication of ground for public uses can be made only by the owner and an intention of the owner to make a dedication must be proved. Before title can be divested by dedication the proof must be very satisfactory either of

an actual intention to dedicate or such acts or declarations as will equitably estop the owner from denying such intention, and there must be an acceptance by the public of the intended dedication. The land owner must do some act or suffer some act to be done from which it can be fairly inferred that he intended a dedication to the public. (*Kelly* v. *City of Chicago,* 48 Ill. 388; *City of Chicago* v. *Stinson,* 124 id. 510; *City of Carlinville* v. *Castle,* 177 id. 105.) There must be evidence of an intention to dedicate, but no particular form or ceremony is necessary. A dedication to a public use is not within the Statute of Frauds, and the mode of making the dedication is immaterial. The intention may be manifested by expressed consent or acquiescence of the owner of the land and the fact of its being used for the public purpose intended by the owner. (*Godfrey* v. *City of Alton,* 12 Ill. 29; *Warren* v. *Town of Jacksonville,* 15 id. 236; *Gentleman* v. *Soule,* 32 id. 271; *Davidson* v. *Reed,* 111 id. 167.) If the owner of the land exhibits a plan of a town and sells lots to individuals, representing to them that it is a plan of a town, the purchasers acquire individual rights against the owner which may be enforced, and such fact is also evidence of an intention to make a dedication to the public; and where the owner of the land sells lots with reference to a plat or map on which a portion indicates a public use, he thereby dedicates such lands to the use of the public for the specified purpose. (*Smith* v. *Town of Flora,* 64 Ill. 93; *Maywood Co.* v. *Village of Maywood,* 118 id. 61; *Marsh* v. *Village of Fairbury,* 163 id. 401; *Kimball* v. *City of Chicago,* 253 id. 105.) The fact that block 30 was not listed for taxation was an evidentiary fact to be considered as tending to show the intention of the owner and that he regarded the block as public property, although the fact might not be conclusive. (*Poole* v. *City of Lake Forest,* 238 Ill. 305.) It appears from the testimony of F. W. Edwards that it was not his intention to dedicate block 30 as a public park but only to

permit or consent to its use by the public. It is probably true that he did not intend to make a dedication to the public but merely to permit the public use and retain the full title and control for the owner, but the existence of such secret intention, existing only in his mind, would not defeat the dedication. Such secret and undisclosed intention, if it existed, is clearly contrary to the intention manifested by his acts and declarations, upon which the public had a right to rely, and the intention must be determined from his acts and declarations. (*Seidschlag* v. *Town of Antioch,* 207 Ill. 280.) The owner of block 30 was equitably estopped to deny the existence of the intention shown by the acts and declarations of Edwards, and the property having been accepted by the public for the use indicated by such acts and declarations, the complainant was entitled to a decree enjoining interference with such use by the sale of the property and diverting it to private uses.

The decree is affirmed.

*Decree affirmed.*