(No. 23936.—
JOHN WELTER *et al.* Appellants, *vs.* GEORGE R. EATON *et al.* Appellees.

*Opinion filed April 16, 1937.*

JAMES SORNA, for appellants.

RUNYARD & BEHANNA, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants, John and Frances Welter, filed a bill in the circuit court of Lake county seeking a mandatory injunction to compel appellees to remove a fence erected by them in certain roads hereinafter described, and to enjoin fur-

ther obstruction of such roads. A temporary injunction was issued and was, on hearing by the chancellor, dissolved, and the bill dismissed for want of equity.

It appears that one Alois Kopecky was the owner of a certain tract of land in Lake county near Lake Marie, which he platted as Lake Marie Highlands Subdivision and offered lots therein for sale. The subdivision consisted of nine blocks divided into lots. As shown by the plat it was intersected by three east and west roads knows as Berwyn road, Bluff Lake road, and Cicero road, and was bounded on the west by what was known as Chicago road. This subdivision abutted a public highway known as Beach Grove road on the south side of that highway. There was a short road extending north and south between blocks 8 and 9, named on the plat as Antioch road. Blocks 8 and 9 are in the southeast portion of the subdivision. A north and south road, extending through the center of the subdivision, joined at its north end with the Beach Grove highway. This road is named on the plat Masaryk road.

Appellants, in 1929, purchased lot 5 in block 9 and shortly thereafter lot 14 in block 8. Both these lots abutted on Antioch road. Antioch road at its north end joins Cicero road, the south one of the east and west roads. The tract composing the subdivision was mortgaged to Frank J. and Amelia Kasik to secure a portion of the purchase price. Both of the lots purchased by appellants were sold free of this mortgage. In 1933 the mortgage was foreclosed and the property repurchased by the Kasiks. In 1935 they sold to appellees blocks 3 and 6. These blocks lie along the westerly part of the subdivision and between Berwyn road on the north and Cicero road on the south. Bluff Lake road lies between blocks 3 and 6. Later in that year appellees erected a woven wire fence on the north and east sides of blocks 3 and 6 and repaired and renewed a fence then existing on the west side of the two blocks, which is also the west line of the subdivision. The fence on the

north was placed in the center of Berwyn road. Appellees plowed up the entire enclosed tract, including that portion of Berwyn and Bluff Lake roads within the fence. In their east fence, where it crosses Bluff Lake road, the appellees placed a sixteen-foot gate.

The theory of the appellants is, that having purchased their lots in this subdivision in accordance with the plat, their grantor and his privies are estopped from closing the roads shown on that plat as highways. The appellees say that the roads in the subdivision were not accepted by the commissioner of highways or any other authorities, were not used and traveled by the public, and the obstructions do not in any way affect the property of appellants or prevent or hinder access thereto or egress therefrom. They say also that since appellants' lots do not abut on the roads closed they have sustained no special damages and have no right to prevent the closing of those roads. This was the theory adopted by the chancellor in dismissing the bill.

The principal question here raised is whether appellants, by reason of their purchase of lots with reference to the plat of the subdivision, have a right to have open, at all times, the strips shown on the plat as roads or highways. Counsel for appellees say that in order to have such right their lands must abut on the roads sought to be closed.

There are two rules of law affecting the matter of vacation of streets and highways. In neither of them is it held to be material whether the plat, which has, as in this case, been duly executed and recorded, be so accepted by public authorities as to amount to a dedication requiring that the public keep the highways in repair.

The rule applicable, where public authorities seek, under the statute, to vacate a public street or highway, is, that a person who does not own land abutting on the highway sought to be vacated, and who is not a party to the proceeding to vacate the same, has only such interest as is possessed by all other members of the public residing in

the vicinity and cannot, in his individual capacity, maintain an action to prevent such vacation, in the absence of a showing on his part that he will suffer special damages not common to the general public. Such a case is *Hartshorn* v. *Bierbom*, 312 Ill. 275, and the cases therein cited.

In the early case of *Zearing* v. *Raber*, 74 Ill. 409, the facts showed that the complainant owned land abutting on the street sought to be closed. This court there stated the rule governing the relationship between the author of the plat, or his privies, and one who has purchased lots with reference to the plat, as follows: "If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plats of spare ground, such as streets, alleys, quays, etc., and sells the lots with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage which the plan represents as belonging to them as a part of the town, or to their owners as citizens of the town. And the right thus passing to the purchasers is not the mere right that such purchaser may use these streets, or other public places, according to their appropriate purposes, but a right vesting in the purchasers, that all persons whatever, as their occasion may require or invite, may so use them; in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers, that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use.— *Rowan's Ex.* v. *Town of Portland*, 8 B. Monr. 232, 237; See also *Bowling Green* v. *Hobsen*, 3 id. 478, 481; *Huber et al.* v. *Gazley et al.* 18 Ohio, 18; *Dummer* v. *Doe, ex dem. Selectmen of Jersey City*, Spencer, 86, 106; *Wickliffe* v. *City of Lexington*, 11 B. Monr. 163."

Counsel argue that this rule is invoked only where it is shown that the complainant owns property abutting on the

highway sought to be closed. This is a misapprehension. Such is the rule, as we have said, where there is a vacation of a street by public authorities under the statute, but the rights of the appellants here are private rights, and the conveyance of lots to them according to the plat made by Kopecky carries the implication of a grant or covenant to them that the tracts of land marked as roads or other public places, as indicated upon the plat, shall be forever open for use not only of the purchasers of the lot but for the public.

In *Corning & Co.* v. *Woolner*, 206 Ill. 190, an attempt was made to vacate, by deed, a certain portion of a street known as Liberty street. Pursuant to that deed the grantee, Corning & Co., proceeded to build a structure on part of the street. Woolner and others filed a bill to restrain Corning & Co. from building upon, or obstructing, Liberty street. The plat had been recorded and lots sold in accordance therewith. The grantors in the deed to Corning & Co., by which a vacation of the street was attempted, claimed to own all lands abutting on both sides of that street. Liberty street was but a part of a plat that had been executed and recorded, though it does not appear that the public authorities accepted it. The vital question in the case was stated in the opinion as follows: "As we regard it, the vital point to be determined in this case and those of similar import is, whether the alleged street which is sought to be vacated or obstructed was by the original owner designated upon the plat with reference to which subsequent lots and tracts have been sold. If so, where private rights may be affected, and as between the author of such plat or his privies in estate and those buying lots upon the faith of such plat or with reference thereto, there is an implied covenant that such designated street or public way shall be forever open for such purposes, and free from any claim or interference by the original owner and author of the plat and those claiming under him." It was there held

that whether the original plat could be considered a good statutory plat or not it was at least sufficient to constitute a common law plat and to manifest an intention on the part of the author to dedicate to public use the designated streets thereon, "which is sufficient to estop such original owner and author of the plat, and those claiming under him, from denying or rescinding such dedication whether it was so accepted by the public authorities of the village or municipality or not."

It was said of certain of the complainants in that case, who owned land outside the platted territory, that they nevertheless had a right of use of Liberty street, which right was affected by the attempted vacation. It was further pointed out that the proposed closing of Liberty street would work inconvenience and pecuniary loss to parties purchasing with reference to and on the faith of the original plat which showed the existence of Liberty street. It is there also said: "But even if no especial inconvenience or loss were shown, the complainants, who are shown to have purchased with reference to said plat, are entitled, under the law, to demand that, as between themselves and Aquilla Moffatt, [the author of the plat,] and those claiming under him, the representations made by said plat as to the public streets thereon, constituting, as they did, inducements to purchasers of property in the territory platted, shall not now, after such purchases have been made, be impugned or held for naught, but that the good faith and verity thereof shall be preserved." To the same effect is *Clark* v. *McCormick,* 174 Ill. 164, *Marsh* v. *Village of Fairbury,* 163 id. 401, and numerous other cases cited in the opinion.

This is the rule applicable here. As between the author of the plat, or his privies in estate, and these appellants, the latter have a right to have the tracts marked on the plat as roadways kept open for their use and the use of

the public. The circuit court therefore erred in dismissing the bill.

The decree is reversed and the cause is remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*