EDWARD J. BOND *et al.*, Plaintiffs-Appellants, v. CLARENCE DUNMIRE *et al.*, Defendants-Appellees.

Fourth District   No. 4—83—0351

Opinion filed December 28, 1984.

Thomas H. Piper, of Carrollton, for appellants.

Denis A. McGrady, Sr., of McGrady & McGrady, of Gillespie, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

This appeal involves a complaint praying that defendants be enjoined from maintaining a barrier across East Street in the H.E. Haag subdivision located in the city of Benld, Macoupin County. The complaint was dismissed on two grounds: first, the cause was barred under the doctrine of *res judicata* by the judgment in a previous case, No. 79—CH—16; and second, the complaint failed to state a cause of action since plaintiffs did not allege the necessary elements for injunctive relief under the law. The complaint was dismissed with prejudice at plaintiffs' cost on the basis of the pleadings. Plaintiffs appeal from the judgment of the circuit court of Macoupin County. We affirm in part, reverse in part, and remand the cause.

Plaintiffs raise two issues on appeal: (1) whether the trial court erred in concluding the cause was barred by the prior judgment in No. 79—CH—16, Bond v. Dunmire, under the doctrine of *res judicata*; and (2) whether the court erred in dismissing the complaint for failure to state a cause of action.

An understanding of the facts in this case would be best served by examination of the following diagram of the street in question and the contiguous property appurtenant thereto.

This is a portion of Plaintiff's Exhibit A

The property is located in the Haag subdivision, which was platted in 1905 and by which the one-block, 40-foot-wide street, East Street, was dedicated to the public use forever, along with all other streets and alleys as platted in the subdivision. The Bonds own lots 14, 15, 16, 17, 18, and 19, the eastern edge of the property abutting on East Street. The Dunmires own lots 9, 10, 11, 12, and 13, which lie south of the Bonds' property, and lot 13 is bordered on the east by East Street. Plaintiff Delaney owns a triangular property adjacent to the properties of the Bonds and Dunmires, the western border of which abuts East Street. The entire subdivision is bordered on the south by property along the northern border of which is a strip now referred to as Sawyerville Road. The Bonds alleged that both they and the defendants derived title to their properties from successors in title to H.E. Haag, the original owner of the subdivision land. These properties, as well as the triangular property belonging to plaintiff Delaney, appear within the platted subdivision as shown by the 1905 plat, an exhibit herein.

Around 1979, the Dunmires erected, and have since maintained, a barrier of railroad ties and wire across East Street along their property's northern border. The Bonds and Mr. Delaney commenced this action seeking an order requiring the Dunmires to remove the barrier from East Street, thereby allowing free ingress and egress to and from their properties. Count I of the complaint pertained to the Bonds, and count II of the complaint pertained to Mr. Delaney. Inasmuch as defendants' motion to dismiss raised the claim of *res judicata* only as to count I, we treat the counts separately.

Defendants argued, and the trial court so found, that the issues raised in count I of the complaint were substantially the same as the issues raised in cause No. 79—CH—16, Edward J. Bond v. Clarence Dunmire, wherein the amended complaint was dismissed at plaintiff's costs on April 8, 1980. In that case, as in this, Bond sought injunctive relief against Dunmire in the matter of the barrier across East Street on the basis of the plat and dedication of the streets and alleys therein to public use. The trial court reviewed the court file in No. 79—CH—16 and concluded that the complaint was dismissed for failure to state a cause of action and was, therefore, disposed of on its merits. The order of dismissal was thus involuntary and for reasons other than for lack of jurisdiction, improper venue, or failure to join an indispensable party and constituted an adjudication on the merits. See Supreme Court Rule 273 (87 Ill. 2d R. 273).

Plaintiffs maintain that the order in No. 79—CH—16 was not a final judgment, since it neither contained the words "with prejudice,"

or words of similar meaning, nor stated specifically the basis on which the dismissal was granted. Plaintiffs urge that the dismissal in the prior action may have been upon some technical deficiency rather than on the merits and that, in view of the wording of the order, defendants have not sustained the burden of proving the complaint was dismissed on its merits.

This court recently discussed the principle of *res judicata* in *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 375-76, 444 N.E.2d 205, 208. *Res judicata* is a doctrine which reflects the public policy favoring finality in litigation and judicial economy. (*Smith v. Bishop* (1962), 26 Ill. 2d 434, 187 N.E.2d 217.) The doctrine of *res judicata* is divided into two branches: estoppel by judgment, sometimes referred to as *res judicata*, and estoppel by verdict, also known as *collateral estoppel. Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785.

Estoppel by judgment (*res judicata*) provides that a valid judgment in a previous action between the parties bars a subsequent action between those parties on the same claim or cause of action. (*City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305.) Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first, *i.e.,* where the causes of action are based upon a common core of operative facts. (*Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 444 N.E.2d 205.) The doctrine applies not only to those issues which were actually raised in the first proceeding, but also to any issues which might have been raised in that proceeding. (*Kahler v. Don E. Williams Co.* (1978), 59 Ill. App. 3d 716, 375 N.E.2d 1034.) Where the doctrine of estoppel by judgment properly applies, it operates without regard to whether the prior adjudication is correct or erroneous. *Morris v. Union Oil Co.* (1981), 96 Ill. App. 2d 148, 421 N.E.2d 278; *La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 528-29, 337 N.E.2d 19, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668; *People ex rel. McAllister v. East* (1951), 409 Ill. 379, 100 N.E.2d 746; *People v. Kidd* (1947), 398 Ill. 405, 75 N.E.2d 851.

Count I of the complaint herein reflects an identity of parties or their privies, *i.e.,* the Bonds and the Dunmires, and substantially the same demand involving the same barricade. Plaintiffs' counsel argued in the trial court that as new counsel in this matter, he sought to phrase the pleadings in this action consistent with those in *Cook v. Mighell Construction Co.* (1976), 40 Ill. App. 3d 1032, 353 N.E.2d 43, wherein the complaint for injunctive relief was successful. Plaintiffs'

counsel argued that the complaint herein alleged additional facts, *e.g.*, that the city had for many years established and maintained East Street as a public street and, more recently, had attempted to abandon a portion or all of it. However, it does not appear from the record that this fact or any other fact essential to plaintiffs' cause of action has come into existence subsequent to the prior action. Hence, this cause is not within the exception from the application of *res judicata* referred to in *Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865, for premature actions where time for performance by a defendant has not arrived, or where the plaintiff has not performed a condition precedent to recovery.

Although the April 1980 order of dismissal did not use the words "with prejudice," which did appear in the dismissal orders considered in *Brainerd v. First Lake County National Bank* (1971), 1 Ill. App. 3d 780, 275 N.E.2d 468, and *Schaeffer v. Zaltsman* (1975), 29 Ill. App. 3d 1011, 331 N.E.2d 212, this does not deprive the order of its finality. In *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 204, 347 N.E.2d 286, 288, this court stated:

> "A general dismissal with no right given to plead over, and followed by no request for leave to plead over is a final, appealable order. (*Doner v. Phoenix Joint Stock Land Bank*, 381 Ill. 106, 45 N.E.2d 20.) Substance, not form, determines whether the order is final. (*Peach v. Peach*, 73 Ill. App. 2d 72, 218 N.E.2d 504.) The phrase that defendant 'go hence without day' are not words of art essential to finality. (*Lakatos v. Prudence Mutual Casualty Co.*, 113 Ill. App. 2d 310, 314, 252 N.E.2d 123.) Neither does finality depend upon whether the 'suit,' 'cause of action' or 'complaint' is dismissed. (*Martin v. Masini*, 90 Ill. App. 2d 348, 354, 232 N.E.2d 770.) The record here demonstrates that the trial judge intended the order in question to be final. On the first two occasions his order specifically dismissed the complaint and granted leave to amend. The order in question dismissed the 'cause' *not* the complaint, and assessed costs against the plaintiff. Had the order been other than final, the trial judge would have had no authority to assess the costs."

In No. 79—CH—16, the trial judge allowed defendant's first motion to dismiss, granting leave to amend. Later, the trial court allowed defendant's motion to dismiss the amended complaint without granting leave to amend or stating the basis for dismissal. The April 1980 order dismissing the first amended complaint assessed costs against plaintiff. Thereafter the trial court retained jurisdiction for 30 days

for purposes of seeking leave to file a second amended complaint. Plaintiffs neither availed themselves of that jurisdiction nor took an appeal. In *St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Company of America* (1979), 73 Ill. App. 3d 935, 393 N.E.2d 611, this court observed that Supreme Court Rule 273 functions to place the burden of clarity in the dismissal order on the plaintiff, *i.e.*, the plaintiff must persuade the trial court either to include a specification that the dismissal is without prejudice or to permit an amendment. If the plaintiff is unsuccessful, his recourse is to appeal. The April 1980 dismissal order was final, and no appeal was taken.

*Bates* and *St. Joseph Data* are controlling on this issue, rather than the cases cited by plaintiffs. *Branom v. Miller* (1960), 25 Ill. App. 2d 94, 166 N.E.2d 123, preceded the effective date of Supreme Court Rule 273. In *In re Estate of Cochrane* (1979), 72 Ill. App. 3d 812, 391 N.E.2d 35, an executor filed a petition to recover alleged assets of an estate. The petition was dismissed on motion, and a second petition with additional allegations was filed within 30 days. As to the second petition, the trial court declined to apply the doctrine of *res judicata*, and subsequently held in favor of the executor. *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 418 N.E.2d 63, involved application of the doctrine of estoppel by verdict, or collateral estoppel, which poses a narrower bar than estoppel by judgment. See *Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 454 N.E.2d 379.

■■■ We conclude that the trial judge correctly dismissed count I on the ground of *res judicata*. Finality cannot be avoided merely by filing a new lawsuit. However, plaintiff Delaney was not a party to the prior action, nor did defendants' motion to dismiss raise *res judicata* as to him. We therefore reverse the trial court's dismissal on the ground of *res judicata* as to count II.

■■ We next consider whether count II was properly dismissed for failure to state a cause of action. Count II alleged a description of Delaney's property and its relationship to East Street; described the Dunmires' property; stated that Haag's property was surveyed, subdivided and platted in April 1905; Haag adopted the survey, subdivision and plat as his act and dedicated to the public use forever the streets and alleys designated on the plat; the plat was filed and recorded (Exhibit A, incorporated into complaint); the plat set forth a street designated as East Street at a specified location; thereafter the city for many years established and maintained East Street as a public street; the city attempted to abandon a portion of the street; the property was surveyed in July 1980 (Exhibit B, incorporated into complaint);

and he, as a landowner adjacent to East Street, and as a result of the city and the public using East Street as a public street, was entitled by common law easement and by easement by prescription to have the street remain open for public use. Count II further alleged that defendants erected a barrier across the street about 120 feet north of its southerly end in March 1979 and thereafter maintained the barrier so as to prevent Delaney free ingress and egress to his property; plaintiff had no other reasonable, adequate or existing means of ingress and egress to his property; defendants refused to remove the barrier as requested; his damages resulting from the obstruction of the roadway were recurrent, continuous and irreparable, and without adequate remedy at law; and that the defendants would continue maintaining the obstruction of the roadway unless restrained from doing so by injunction. Delaney sought an order requiring defendants to remove the barrier and refrain from further obstructing East Street.

Defendants' motion to dismiss alleged that count II failed to state a cause of action and set forth a proper basis for injunctive relief; Delaney's claim of a common law easement and easement by prescription acknowledged existence of a proper legal remedy; Delaney failed to state he had requested defendants to remove the barrier; the complaint failed to show a clear and palpable violation of Delaney's rights; and the complaint failed to state that any damage or injury would be sustained by him if injunctive relief was not granted.

The court's letter opinion quoted *First National Bank v. City of Chicago Heights* (1978), 63 Ill. App. 3d 963, 968, 381 N.E.2d 446:

"A property owner has no special right of access to a street that is not yet improved or opened by a city or in long time public use. [Citations.] The decision to open a street is a discretionary function, assigned by law to a municipality alone. [Citation.] And a property owner cannot obtain rights to the street by unilateral action."

The trial court went on:

"In order to be entitled to injunctive relief *** the complaint for injunction must allege (a) possession of a certain and clearly ascertained right which requires protection; (b) immediate and irreparable injury if the injunctive relief is denied; (c) lack of an adequate remedy at law; and (d) a probability of ultimate success on the merits. *Stocker Hinge Manufacturing Co. v. Darnel Industries*, 61 Ill. App. 3d 636, 377 N.E.2d 1125, and *ABC Trans National v. Aeronautics Forwarders*, 62 Ill. App. 3d 671. Plaintiff's complaint for injunction does not state a cause of action."

The court appears to have applied the standard for issuance of a temporary restraining order. On appeal, the parties frame the issue as whether the complaint stated a cause of action.

As a preliminary matter, we note that this court set forth the standard to be applied in considering a motion to dismiss in *Skinner v. Mahomet Seymour School District* (1980), 90 Ill. App. 3d 655, 656-57, 413 N.E.2d 507, 508:

> "There are certain general rules of construction to be applied when a complaint is challenged for failure to state a cause of action. The essential test of the sufficiency of the complaint is whether it reasonably informs the defendant of a valid claim under a general class of cases of which the court has jurisdiction. (*Kramer v. McDonald's System, Inc.* (1978), 61 Ill. App. 3d 947, 378 N.E.2d 522, *aff'd on other grounds* (1979), 77 Ill. 2d 323, 396 N.E.2d 504.) In determining the sufficiency of the complaint, the court must accept as true all well pleaded facts and reasonable inferences drawn therefrom. (*Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 363 N.E.2d 167.) No pleading is bad in substance where it reasonably informs the opposite party of the nature of the claim. (Ill. Rev. Stat. 1979, ch. 110, par. 42(2).) Finally, a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under pleadings which would entitle plaintiff to relief. *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 325 N.E.2d 799."

In reviewing the dismissal of a complaint, the facts as stated therein are accepted as true. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) Moreover, section 2—612(b) of the Code of Civil Procedure provides a test for defects of substance where a pleading is attacked. (Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b), formerly Ill. Rev. Stat. 1979, ch. 110, par. 42(2).) According to this test, allegations of legal conclusions and allegations of evidence constitute merely formal defects and not defects of substance. (*Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912.) Additionally, as exhibits become part of a complaint for all purposes, a motion to dismiss also admits the facts contained in such exhibits. *Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 442 N.E.2d 648.

Plaintiffs rely on *Wattles v. Village of McHenry* (1922), 305 Ill. 189, 137 N.E. 114, *Marshall v. Pfeiffer* (1924), 314 Ill. 286, 145 N.E. 411, and *Gerstley v. Globe Wernicke Co.* (1930), 340 Ill. 270, 172 N.E.2d 829, as well as the *Cook* case, as supporting relief in their

cause of action. *Wattles* succinctly summarizes the law regarding the rights of property owners in the streets, alleys, and public places laid out in a platted subdivision:

> "No law is better settled in this State than that which controls this case. Where the owner of land lays it out in lots and blocks and makes and exhibits a plat thereof showing streets and alleys and sells some of the lots with a clear reference to the plan, the purchaser acquires as appurtenant to the lots every easement, privilege and advantage which the plan represents as belonging to them as a part of the platted territory. This privilege is not limited to the purchaser, but is a right vesting in the purchaser that all persons whosoever, as their occasion may require, may use the streets, alleys and other public places according to their appropriate purposes. The sale and conveyance of lots according to a published plat implies a grant or covenant to the purchaser that streets, alleys and other public places indicated as such upon the plat shall be forever open to the use of the public, free from all claim of interference of the proprietor inconsistent with such use. (*Thompson v. Maloney*, 199 Ill. 276; *Stevenson v. Lewis*, 244 id. 147.) It is unimportant whether the public has so far accepted the dedication as to be bound to keep the streets and alleys in repair, since the question involved is simply one of private right. (*Zearing v. Raber*, 74 Ill. 409; *Earll v. City of Chicago*, 136 id. 277.) The easement appurtenant to each lot by reason of the existence of the plat and the sales with reference to it is private property. It cannot be lost merely by non-user where there is no adverse possession. *Swedish Evangelist Lutheran Church v. Jackson*, 229 Ill. 506." (*Wattles v. McHenry* (1922), 305 Ill. 189, 192, 137 N.E. 114, 116.)

(See also *Marsh v. Village of Fairbury* (1896), 163 Ill. 401, 45 N.E. 236; *Maywood Co. v. Village of Maywood* (1886), 118 Ill. 61, 6 N.E. 866; *Corning & Co. v. Woolner* (1903), 206 Ill. 190, 69 N.E. 53; *Village of Benld v. Dorsey* (1924), 311 Ill. 192, 142 N.E. 563.) Other jurisdictions are in accord with these principles. (See generally Annot., A.L.R.2d 607, sec. 3 (1949); 2 Thompson on Real Property sec. 371 & n.4 at 458-59 (1980).) There can be no doubt that a party purchasing land in a subdivision with reference to a recorded plat, whereupon the various streets and alleys are dedicated to the public, acquires a right to have the streets and alleys remain open to all who would use them.

Further, interference with this right is properly the subject of

injunctive relief. As our supreme court stated in *Zearing v. Raber* (1874), 74 Ill. 409, 413:

> "The only remaining question relates to the jurisdiction of a court of equity, and upon this we entertain no doubt. The evidence shows a threatened nuisance, tending to deprive appellee and others of the full and free use of this street, as he is entitled to have it used, and this is a well recognized ground for equitable interposition. 2 Story's Equity Jurisprudence, sec. 927; *Corning v. Lowrie*, 6 Johns. Ch. 439; *Rowan's Ex. v. Town of Portland*, 8 B. Monr. 232; *Hills v. Miller*, 3 Paige, 254."

See also *Wattles v. Village of McHenry* (1922), 305 Ill. 189, 137 N.E. 114.

■ Upon this body of authority, we conclude that count II of the complaint sufficiently states a cause of action and ought not to have been dismissed. Defendants rely upon *First National Bank v. City of Chicago Heights* (1978), 63 Ill. App. 3d 963, 381 N.E.2d 446. It involved the rights of owners of property adjacent to a dedicated street *as against the municipality.*

There are two rules of law as to the rights of property owners in the platted streets: First, the rule(s) in actions against public authorities, which are generally vested by law with discretion in such matters; and, second, the rule(s) in actions against the grantor, his privies, and other individuals—*i.e.*, involving *private rights. First National Bank* is illustrative of the former rule, whereas *Wattles* is illustrative of the latter.

In *First National Bank,* the plaintiffs obtained an injunction ordering the city to remove barriers it had placed blocking the plaintiffs' access to a dedicated street adjacent to their property. The case involved a platted rectangle, bordered on the north by 13th Street and on the south by 14th Street, with a center strip running north and south between 13th and 14th streets designated by plat as Wilson Avenue. Although designated, that avenue had never been opened or improved as a street by the city. Plaintiffs had built a shopping center on property directly west of this land, with an entrance and exit onto 14th Street. The city had previously granted plaintiffs' zoning changes to permit commercial use of their property running along 14th Street on both sides of the land designated as Wilson Avenue. At plaintiffs' request, the city had additionally vacated that part of Wilson Avenue from the north end of plaintiffs' property south to 14th Street. The remainder of land in the rectangle, most of it north of plaintiffs' property to 13th Street, remained vacant, except for a city-

owned well house. A graveled strip ran from the well house to 13th Street, and there was no evidence that the strip had ever been used by any type of public traffic. Subsequent to the zoning changes, one of the plaintiffs began to grade and gravel a road on land north of their property, corresponding to the area designated on the plat as Wilson Avenue. With the project under way, that plaintiff applied to the city for a building permit for a street. The city denied the permit, indicating that in order to limit traffic around the residential area north of 13th Street it did not intend to improve or open Wilson Avenue as a public street. The city barricaded the field, preventing plaintiffs' access to the graded area across it. Plaintiffs filed the action, seeking an injunction, and the trial court ordered the city to stop obstructing public use of the street plaintiffs had graded.

On appeal, the reviewing court in *First National Bank v. City of Chicago Heights* (1978), 63 Ill. App. 3d 963, 381 N.E.2d 446, reversed that order, reasoning:

> "A property owner has no special right of access to a street that is not yet improved or opened by a city or in long time public use. [Citations.] The decision to open a street is a discretionary function, assigned by law to a municipality alone. [Citation.] And a property owner cannot obtain rights to the street by unilateral action. [Citations.] There is no showing here that the City abused its discretion in not opening Wilson Avenue, and concomitant to this exclusive discretion, the City had a right to prevent the plaintiffs' unauthorized opening of and access to it. We, therefore, reverse the circuit court's order to the City to remove the obstruction to the plaintiffs' access to Wilson Avenue; the plaintiffs have no special access right to the street at this time." (63 Ill. App. 3d 963, 968, 381 N.E.2d 446, 450.)

Such a special, or particular, right of access may be deemed necessary, as in *First National Bank*, to sustain a property owner's action against a municipality in relation to platted streets.

As was stated in *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 251-52, 68 N.E.2d 278, 281:

> "The streets and sidewalks of a city are held in trust by the municipality for the use of the public, for purposes of travel and as a means of access to and egress from property abutting thereon. The primary right to the use of the streets and sidewalks of a city for the purposes of travel belongs to the public everywhere, and not to the abutting property owners alone. The general public has the paramount right to the use of the

streets in all their parts \*\*\*. That right is the right of all persons, whether abutting property owners or residents or nonresidents of the municipality, to pass over it freely and without impediment whenever they have occasion or desire to do so. It is not an absolute right in every or any person at all times or under all circumstances, but is subject to such incidental or partial restriction or obstruction as manifest necessity may require. An abutting property owner has the right, for the convenience of his property, to make all proper and reasonable use of the sidewalk and street not inconsistent with the paramount right of the public.

Article 23 of the Cities and Villages Act grants certain powers to the corporate authorities of municipalities, among which are the power to vacate, lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets and sidewalks, [citation] the power to regulate the use of streets, [citation] the power to regulate the use of sidewalks, [citation] and the power to regulate traffic upon the streets and sidewalks. [Citation.] There can be no question but that the title to all streets and sidewalks is vested in the city in trust for the public, and under the above provisions of the Cities and Villages Act they are under the control, supervision and dominion of the corporate authorities of the city for the purpose of preserving them and promoting their intended use."

Accord, *Salem National Bank v. City of Salem* (1964), 47 Ill. App. 2d 279, 198 N.E.2d 137 (driveway regulations).

Similarly, in *Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, 82, 169 N.E.2d 360, 362, the court stated:

"A property owner whose land abuts upon a public street or highway has, as an incident to his ownership, the right of access. [Citations.] This right is subject, nevertheless, to the right of the State to regulate and control the public highways for the benefit of the public even though the abutter may be inconvenienced. [Citations.] The regulation or restriction must, however, be reasonable. [Citation.]"

Legislative grants of authority to units of state and municipal government to regulate and control the public ways for the benefit of the public, limited by the reasonableness of such regulations or restrictions, currently appear in sections 11—80—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—80—2) ("The corporate authorities of each municipality may regulate the use of the streets and other municipal property"); section 4—201.1 of the Illinois Highway

Code (Ill. Rev. Stat. 1983, ch. 121, par. 4—201.1) ("[The Department of Transportation has the power to] determine and adopt rules, regulations and specifications for State highways not inconsistent with this [Illinois Highway] Code); and section 4—210 of the Illinois Highway Code (Ill. Rev. Stat. 1983, ch. 121, par. 4—210) ("Except where the right of access has been limited by or pursuant to law, every owner or occupant of property abutting upon any State highway shall have reasonable means of ingress from and egress to the State highway consistent with the use being made of such property and not inconsistent with public safety or with the proper construction and maintenance of the State highway for purposes of travel, drainage and other appropriate public use"). See also sections 11—91—2 (concerning devolution of title to property of streets and alleys when vacated by virtue of ordinance of a municipality) and 11—105—1 (authorizing corporate authorities of municipalities to accept or receive public grounds and easements located within the corporate limits or in certain unincorporated territory, to hold and maintain such grounds and lands, and to supervise or regulate their use for any proper public use) of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, pars. 11—91—2, 11—105—1).

That there are two rules of law affecting matters relating to streets and highways, as to those seeking to enforce their rights having purchased lots in a subdivision in accordance with a plat, is illustrated by the case of *Welter v. Eaton* (1937), 366 Ill. 143, 7 N.E.2d 855. In that case, the Welters filed a bill seeking a mandatory injunction to compel defendants to remove a fence erected by them in certain roads in a subdivision and to enjoin further obstruction of such roads. The defendants erected or repaired fences at either end of their property across a road which ran through their lots, and placed another fence north of their property through the center of another road. They plowed up the entire enclosed tract, including roadways within the fence, and placed a 16-foot gate in the east side of the fence across the road running between their lots. The property of both the Welters and defendants had been purchased in a platted subdivision divided into lots, with the named streets shown on the plat.

The Welters' property in the subdivision *did not* abut on the roads the defendants had closed up within their fences. Appealing dissolution of a temporary injunction in their favor and dismissal of the bill for want of equity, the Welters maintained that, having purchased their lots in the subdivision in accordance with the plat, their grantor and his privies were estopped from closing the roads shown on that plat as highways. The defendant argued that the roads in the subdivi-

sion had not been accepted by the commissioner of highways or any other authorities, had not been used or traveled by the public, and that the obstruction had not in any way affected the property of the Welters or prevented or hindered access thereto or egress therefrom. Defendants further argued that since the Welters' lots did not abut on the roads closed, they had sustained no special damages and, therefore, had no right to prevent the closing of the roads. Defendants' theory had been adopted in the dismissal of the bill.

In *Welter*, the reviewing court reversed in recognition of the different rules of law applicable as against the actions of the public authorities and those of the grantor of a platted subdivision or his privies:

> "The principal question here raised is whether [Welters], by reason of their purchase of lots with reference to the plat of the subdivision, have a right to have open, at all times, the strips shown on the plat as roads or highways. Counsel for [defendants] say that in order to have such right their lands must abut on the roads sought to be closed.
>
> There are two rules of law affecting the matter of vacation of streets and highways. In neither of them is it held to be material whether the plat, which has, as in this case, been duly executed and recorded, be so accepted by public authorities as to amount to a dedication requiring that the public keep the highways in repair.
>
> The rule applicable, where public authorities seek, under the statute, to vacate a public street or highway, is, that a person who does not own land abutting on the highway sought to be vacated, and who is not a party to the proceeding to vacate the same, has only such interest as is possessed by all other members of the public residing in the vicinity and cannot, in his individual capacity, maintain an action to prevent such vacation, in the absence of a showing on his part that he will suffer special damages not common to the general public. Such a case is *Hartshorn v. Bierbom*, 312 Ill. 275, and the cases therein cited." (*Welter v. Eaton* (1937), 366 Ill. 143, 145-46, 7 N.E.2d 855, 856.)

The *Welter* court contrasted this rule, applicable in regard to the actions of public authorities, with that applicable as against the actions of the grantor or his privies, and quoted from the early case of *Zearing v. Raber* (1874), 74 Ill. 409, 412. The *Zearing* court, referring to the rule as stated in 2 Smith's Leading Cases 154 (7th Am. ed.), said:

" 'If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plats of spare ground, such as streets, alleys, quays, etc., and sells the lots with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage which the plan represents as belonging to them as a part of the town, or to their owners as citizens of the town. And the right thus passing to the purchasers is not the mere right that such purchaser may use these streets, or other public places, according to their appropriate purposes, but a right vesting in the purchasers, that all persons whatever, as their occasion may require or invite, may so use them; in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers, that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use. [Citations.]' " (*Zearing v. Raber* (1874), 74 Ill. 409, 412.)

Defendants argued that the rule of *Zearing* was invoked only when it was shown that the complainant owned property abutting on the highway sought to be closed.

The *Welter* court rejected this argument as a misapprehension of the law, stating that such was the rule only where there had been a vacation of a street by public authorities under the statute, whereas the Welters' rights were private rights, and conveyance of lots to them according to the grantor's plat carried the implication of a grant or covenant to them for the tracts of land marked as roads or other public places, as indicated upon the plat, shall be forever open for use not only of the purchasers of lots but for the public.

So it is here. As between the author of the plat, or his privies, here the Dunmires, and others who purchased in the subdivision with reference to the plat, the latter have a right to have the tracts marked thereon as roadways kept open for their use and the use of the public. As stated in *Earll v. City of Chicago* (1891), 136 Ill. 277, 285, 26 N.E. 370, 372, there may well be private rights, in respect to streets, in grantees of conveyances made under the plat, although there may have been no complete dedication of the streets to the public by an acceptance of the proffered dedication. (See also *Hamilton v. Chicago, Burlington & Quincy R.R. Co.* (1888), 124 Ill. 235, 241, 15 N.E. 854; *Wattles v. Village of McHenry* (1922), 305 Ill. 189, 137 N.E. 114; *Zearing v. Raber* (1874), 74 Ill. 409.) This doctrine as to the pri-

vate rights in platted streets, as set forth in *Zearing* and *Wattles* and referred to in numerous other cases (see, *e.g., Gridley v. Hopkins* (1877), 84 Ill. 528, 531; *Maywood Co. v. Village of Maywood* (1886), 118 Ill. 61, 71-72, 6 N.E. 866, 870-71; *Smith v. Town of Flora* (1872), 64 Ill. 93; *Marshall v. Pfeiffer* (1924), 314 Ill. 286, 145 N.E. 411; *Trustees of Schools v. Dassow* (1926), 321 Ill. 346, 353, 151 N.E. 896, 899; *Gerstley v. Globe Wernicke Co.* (1930), 340 Ill. 270, 172 N.E. 829; and *Marshall Field v. Barling* (1894), 149 Ill. 556, 37 N.E. 850), is that of the common law (see *Earll v. City of Chicago* (1891), 136 Ill. 277, 285, 26 N.E. 370, 372).

Affirmed as to count I; reversed as to count II; cause remanded for further proceedings consistent with this opinion.

GREEN, P.J., and WEBBER, J., concur.